[No. 24951.   Department One.   April 2, 1934.]

JOHN GRUGINSKI, *Respondent,* v. C. W. LANE *et al., Appellants.*[1]

*John F. McCarthy* and *Senn & Recken,* for appellants.

*W. H. Sibbald,* for respondent.

MAIN, J.—This action was brought to recover damages which resulted from the malpractice of a physician and surgeon. The trial resulted in findings of fact from which the court concluded that the plaintiff was entitled to recover. Judgment was entered against the defendants in the sum of four thousand dollars, from which they appeal.

[1]Reported in 30 P. (2d) 970.

The facts are these: The appellant C. W. Lane is a physician and surgeon located at Castle Rock, Cowlitz county, Washington, who will be referred to as the only party appellant. During the night of October 10, 1932, the respondent, a young man twenty-one years of age, in an automobile accident, sustained a compound fracture of the humerus, about three inches above the elbow. He called upon the appellant, who took him to the hospital at Longview. There, the appellant called in another surgeon to assist him. At the time, the arm was bruised, was bleeding, and a small piece of bone was protruding through the flesh.

An operation was performed, the fracture reduced, and the arm placed in what is known as an aeroplane splint. The frame portion of the splint was attached to the body, and the portion which sustained the arm projected forward and was sustained by braces in order that the arm might be kept in its natural position. The portion which held the arm was concave, and made of aluminum. The arm was bandaged, and the respondent remained in the hospital for a period of eleven days. Two or three times, while he was in the hospital, the bandages were removed and fresh bandages put on.

After leaving the hospital, the respondent went back to Castle Rock, and called upon the appellant two or three times each week. During this period of time, the bandages were not removed, and from time to time additional bandages were put on. When the bandages were removed, approximately three weeks after the respondent left the hospital, and the splint was taken off, the respondent had what is known as Volkmann's Contracture, which is evidenced by inability to straighten the wrist and fingers. The injury to the arm, the medical testimony agreed, was permanent.

The extent of the injury was such as practically deprived the respondent of the use of the arm from the elbow down.

The cause of the injury, it seems to be agreed by the doctors, was starvation of the muscles and nerves for lack of arterial blood. Upon the question as to what caused the lack of this blood, the medical testimony is in dispute. The theory of the respondent was that the bandages had been placed upon the arm too tight, and that this shut off the flow of arterial blood and resulted in the condition mentioned. In support of this theory, one doctor testified that, in his opinion, the result was caused by bandages which were too tight. Three doctors testified for the appellant, in addition to his own testimony, and it was their theory that the stoppage of the flow of blood was caused by a blood clot that got into the artery feeding the lower arm at the time of the injury, or by an injury to the spiral nerve.

The testimony being in conflict as to what produced the result, the condition of the hand during the three weeks after the respondent left the hospital and before the splint was removed, becomes material. The doctors appear to agree substantially that, if during this three-week period the hand was excessively swollen and had a blue or purple color, it would indicate that the flow of blood had been arrested by pressure upon the arm. In this instance, it would be the bandages. On the other hand, if the flow of blood was arrested by a blood clot or injury to the nerve, the hand would be pale or have a cadaverous appearance. The respondent called a considerable number of lay witnesses who had seen the hand and arm during the three-week period, and these testified in substantial accord, that the hand and fingers were excessively swollen and had a bluish or purplish color. The trial court com-

mented favorably upon the intelligence, candor and fairness of some of these witnesses.

This testimony directly supports the respondent's theory and the medical testimony offered by him to the effect that the bandages were placed and kept upon the arm too tight, and that this is what caused the injury. One of the doctors called by the appellant testified that, if the hand, during the three-week period, was excessively swollen, good practice would demand that the bandages be removed to find the cause. Another testified that, if the patient complained of pain, the bandages should have been removed. There was evidence that he did complain of pain.

We recognize the rule that the mere fact that a bad result followed was not, of itself, evidence of negligence on the part of the appellant. We also recognize the rule that, if the treatment actually employed had the approval of at least a respectable minority of the medical profession and was recognized by such as a proper method, there would not be negligence. But that rule has no application here, because the question is what caused the condition of the arm. If the condition was caused by too tight bandaging, it necessarily follows that the appellant was negligent in failing to give it proper care.

After giving due consideration to all the evidence in the case, we are of the opinion that the view of the trial court was correct, and is sustained by the weight thereof. The fact that more doctors testified for the appellant than for the respondent, is not of controlling importance. The question is the weight to be given to the testimony, considered in connection with all the other evidence in the case.

The judgment will be affirmed.

BEALS, C. J., MILLARD, STEINERT, and MITCHELL, JJ., concur.