GRESHAM *v.* FORD.

(*Knoxville,* September Term, 1950.)

Opinion filed June 16, 1951.

HAL H. CARR, of Blountville, for plaintiff in error.

HODGES & DOUGHTY, of Knoxville, and PRICE & PRICE, of Johnson City, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

In this case the jury found that Dr. Gresham had been guilty of malpractice for which Mrs. Ford was entitled to the damages awarded. The Court of Appeals affirmed the judgment entered by the Trial Court on that verdict. The controlling question made in each Court by Dr. Gresham's motion for a directed verdict is whether the jury's verdict is supported by any material evidence. That is the question here, certiorari having been granted.

Mrs. Ford was about forty years old at the time of the alleged malpractice. She had undergone four major abdominal operations and a number of minor ones, and

has been in the hospital numerous times over a period of years. She is very nervous.

On account of the fact that some of her organs have been removed it has been necessary for some years to inject from time to time a fluid of some character into her body. Generally this has been done by means of a needle inserted in the left arm within a given area.

While she was in the hospital in January of 1947 she believed that one of the nurses employed by this hospital had broken and left in her arm a part of a hypodermic needle. The nurse said Mrs. Ford was mistaken. Dr. Gresham was her doctor.

Thereafter on March 17, 1947, she went to Dr. Gresham's office and showed him a knot left on her left arm in that area in which these many injections had been made. Upon that occasion she reiterated her belief that this needle was in that arm. She said it gave her some pain and that she sometimes felt a prick in this area when she moved that arm. She told Dr. Gresham that she did not want him to operate on this arm for the purpose of removing the needle unless he was sure it was there. She requested him to more certainly ascertain the existence of the needle by the use of the X-ray machine which he had in his office.

Mrs. Ford says that in response to her direction not to operate unless he was sure of the needle's existence, the doctor replied that "regardless of what it was, it should be seen about". He thereupon administered a local anæsthetic and cut into this knot. It is quite apparent that this was a very minor operation attended with no danger. He did not find a needle, but he did remove some tissue which had been hardened by reason of the many injections mentioned. He told her of the removal of this tis-

sue and that she was just "imagining" that a needle was in her arm.

Thereafter Mrs. Ford went to the doctor's office on three or four occasions and on June 4, 1947, in response to her renewed insistence that this needle was in her arm, the doctor made an X-ray after first undertaking to ascertain by feeling this knot and scar as to whether a needle was there. The X-ray disclosed a part of a broken hypodermic needle slightly above and laterally with the place where the doctor had operated some ten weeks before. He sent her to the hospital and put her under an anæsthetic which all the doctors in this record agree was the best to be administered. There is no evidence that this is not the anæsthetic which would have been used had the X-ray been made on March 17, and the appearance of the needle revealed thereby at that time. The needle was then removed by an operation which left a scar from three to four inches in length. Necessarily that same scar would have been left had the needle been removed on March 17.

Following this second operation, Mrs. Ford suffered violent nausea continuously for a week and left the hospital in that condition. She went directly to another hospital where she remained a few days. As stated by the Court of Appeals, it was upon her request that she was permitted to leave the hospital on this occasion. It is pertinent here to observe that the nausea mentioned was an affliction from which Mrs. Ford had suffered for several years, and on account of which she had sometimes gone to the hospital, and sometimes been treated at home.

In this case, as in *Floyd* v. *Walls*, 26 Tenn. App. 151, 164, 168 S. W. (2d) 602, 607, the question is "whether under the recognized standard of practice in the community (Dr. Gresham) was negligent in failing to make X-ray pictures of" the swollen area in Mrs. Ford's arm

before performing the minor operation mentioned. The Trial Judge and the Court of Appeals concurred in the conclusion that there was substantial evidence to support a conclusion of negligence in so failing to take such X-ray picture.

In the Floyd case, supra, it was held that the question of whether the failure to take such X-ray picture was negligence "was a question to be determined upon the testimony of experts skilled in the treatment of such injuries", and that "there is no expert testimony in this case upon which a finding of negligence upon the part of the defendants could be predicated". In addition to denial of certiorari in that case, the just quoted holding therein is affirmatively re-stated with approval by this Court in *Quinley* v. *Cocke,* 183 Tenn. 428, 441, 192 S. W. (2d) 992. So this case is reduced to the question of what the experts in the instant case testified about the conduct of Gresham in making the first operation before taking an X-ray picture of the aforementioned area of Mrs. Ford's arm.

Four doctors practicing in and around that vicinity, including Dr. Gresham, were called as witnesses. Each testified in substance that where the complaint is localized to the outer surface in a given area the practice of probing that area to locate a foreign object is followed by the doctors both in Kingsport and Johnson City, and that this is a proper method of determining the existence there of such foreign substance. There is no evidence that this method is not considered by any experts not to be a proper method. Dr. McNeer and Dr. Reed testified that an "X-ray examination would be the best way" to determine the existence of the foreign substance, but both agree that the method followed by Dr. Gresham "is a proper way". The uncontradicted testimony of the doctors is

that the procedure followed by Dr. Gresham is the procedure followed "by many good doctors in this vicinity".

It is seen from that above said that all the testimony which may be considered upon the determinative question is that the course followed by Dr. Gresham was a proper course, and one advocated by many of the doctors in good standing in that vicinity.

In the Floyd case, supra, the holding of which was re-affirmed by this Court in *Quinley* v. *Cocke*, supra, it is said:

"And in *Duckworth* v. *Bennett*, supra [320 Pa. 47, 181 A. 558], the supreme court of Pennsylvania said: 'Where competent medical authority is divided, a physician will not be held responsible if, in the exercise of his judgment, he followed a course of treatment advocated by a considerable number of his professional brethren in good standing in his community. . . . A physician is required to exercise only such reasonable skill and diligence as is ordinarily exercised in his profession'.

"And in *Boyce* v. *Brown*, supra (51 Ariz. 416, 77 P. (2d) [455], 457), the supreme court of Arizona said: 'The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant is not sufficient to establish malpractice unless it also appears that the course of treatment followed deviated from one of the methods of treatment approved by the standard in that community'." 26 Tenn. App. at pages 167-168, 168 S. W. (2d) at page 608.

Applying the above stated rule to which this Court is committed to the undisputed testimony in this case it must necessarily be concluded, in our opinion, that there is no substantial evidence in this record to support the jury's verdict finding Dr. Gresham guilty of malpractice.

*Haskins* v. *Howard,* 159 Tenn. 86, 16 S. W. (2d) 20, 21, to which reference is made in the opinion of the Court of Appeals, was a case in which the doctor operated for a tumor· although "he was 'apprehensive' of pregnancy at the time he operated". There was much expert evidence to the effect.that an operation under such conditions is very dangerous, and is not done unless "it is absolutely necessary". There was no immediate necessity for the operation which was fraught with so much danger, and, hence, according to expert testimony, was not regarded as a proper practice in the situation there prevailing. We have no such situation as that in this case, nor any expert testimony to the same effect. Notwithstanding our deference for the opinion of the learned Court of Appeals, we are compelled to the conclusion that the *Haskins* v. *Howard* case is not point.

The judgment of the Court of Appeals and of the Circuit Court will be reversed. The motion of Dr. Gresham for a directed verdict will be sustained and the suit dismissed with all cost adjudged against Mrs. Ford. The cause will be remanded for the entry of such an order.

All concur.