528 So.2d 653 (1988)
John D. REID, Appellant,
v.
NORTH CADDO MEMORIAL HOSPITAL, Appellee.
No. 19588-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*654 Edmund M. Thomas, Shreveport, for appellant.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for appellee, North Caddo Memorial Hosp.
Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for appellee, William R. Brown, M.D.
Before HALL, SEXTON and NORRIS, JJ.
NORRIS, Judge.
In this medical malpractice action tried before a judge plaintiff, John Reid, appeals the judgment granted in favor of defendants, Dr. William R. Brown and North Caddo Memorial Hospital. We affirm.
On Sunday, October 26, 1980 John Reid was involved in an altercation with his wife's boyfriend. According to the plaintiff the second blow he struck knocked out three of the victim's teeth and cut the little finger of his left hand. Reid sought treatment at the emergency room of North Caddo Memorial Hospital in his hometown, Vivian, Louisiana. Reid drove from south Shreveport, where the altercation took place, to Vivian in an effort to evade any legal consequences of his assault. Reid testified that when he was first admitted to the emergency room at 2:00 or 3:00 p.m. he told the head nurse that he had hurt his left little finger during a fight, having "hung it on a boy's tooth." Reid was then treated by the defendant, Dr. William R. Brown. Dr. Brown was a resident at the LSU Medical Center who "moonlighted" during weekends by providing emergency room services for the hospital. Dr. Brown testified that he had no specific recollection of treating Reid, and that he could only rely on what was written on the emergency room sheet. Reid testified that he had told Dr. Brown he injured his finger during a fight, and that he had made it clear the cut was from a tooth. Dr. Brown's notes on the emergency room record said there was a 2 centimeter (¾") laceration on the dorsum (the top side of the hand). There were also notations that the cut was sustained during a fist fight, that he questioned whether the wound was secondary to a human tooth, and that he elected his treatment on the basis of a doubtful bite history. The emergency room notes indicate that Dr. Brown X-rayed the finger, which revealed nothing abnormal, irrigated the wound with saline solution, sutured the cut closed, applied Geramycin ointment (a local antibiotic), and wrapped the wound in a sterile dressing and an ace bandage. Dr. Brown also concluded from his notes that he had instructed Reid on the signs of infection and instructed him to return to the clinic if they manifested. There was no notation of when he told Reid to see another doctor, but Dr. Brown testified that his customary practice was to tell the patient to see Dr. Haynes the next day. Reid said that he was told to see Dr. Haynes on Wednesday.
Reid testified that he returned to the emergency room later that same evening complaining of extreme pain in his arm and hand, and that Dr. Brown gave him Tylenol 3 but did not re-examine the wound. The emergency room records show that Reid was given the pain killer, but do not reflect a second visit. October 28, Tuesday night, a friend drove Reid to see Dr. Haynes at the hospital. Reid told the doctor he was in pain and how he had been injured. Reid's left little finger was infected when Dr. Haynes saw it. He treated the wound by removing the stitches, opening the wound, cleaning it, hospitalizing Reid and placing him on intravenous antibiotics. Reid was discharged from the hospital November 4. Dr. Haynes saw him again on the 7th and 10th of November. On November 10 he sent Reid to Dr. McAlister, an orthopedic specialist.
Dr. McAlister first saw Reid November 11, 1980. In his deposition (Dr. McAlister did not testify at trial) Dr. McAlister stated that Reid had suffered persistent soreness *655 and stiffness in the hand. X-rays revealed some narrowing of the joint space, which resulted in permanent injury. Dr. McAlister concluded that Reid had an active infection and septic arthritis in the joint, which needed drainage. Reid entered the hospital November 12. Dr. McAlister irrigated and debrided the joint, and inserted a closed suction tube for drainage. Reid remained in the hospital four days. On January 23, 1981 Reid was discharged from Dr. McAlister's care. Reid did not seek medical attention again until July 9, 1982 when he returned complaining that he had difficulty gripping and holding large objects. At that time he had a motion range of 0° to 40° in the MP joint, as opposed to a norm of 0° to 70° or 90°. Dr. McAlister assigned him a 40% disability rating of the little finger, or a disability rating of 4% of the whole hand.
Reid is a left-handed welder, who testified to significant lost income and difficulty with his work due to the disability.
Reid named Dr. Brown, North Caddo Memorial Hospital and their respective insurers defendants in a medical malpractice suit. At the close of the trial North Caddo Memorial Hospital was released in its individual capacity but remained party to the suit as Dr. Brown's employer. At trial the plaintiff called Dr. Ricky Jones, an expert in family medicine; Dr. Malcomb P. Russell, Director of the Huey P. Long Hospital emergency services and a clinical instructor in the Department of Medicine from Tulane; and the defendant, Dr. William R. Brown on cross examination. The defendants' experts were Dr. Brown; Dr. Norris Knight of Texarkana, a specialist in the field of orthopedic surgery; and Dr. John H. Haynes, Director of the North Caddo Memorial Hospital, a family practitioner. The deposition of Dr. Clinton G. McAlister, a Shreveport/Bossier City specialist in hand surgery was entered into evidence by the stipulation of both parties.
After hearing the evidence the trial judge concluded that the applicable standard of care for Dr. Brown was that of a general practitioner practicing in an emergency room setting. The judge found that "there are no set medical standards as to suturing of human bite wounds or administration of antibiotics," and that Dr. Brown's initial treatment of debriding the wound, suturing it, applying Geramycin ointment, wrapping the hand, explaining the symptoms of infection, and instructing Reid to see his regular doctor within a few days did not constitute malpractice. The judge also found that Dr. Brown's failure to re-examineReid's hand when he returned that night was not a breach of the standard of care owed to the plaintiff, because Dr. Brown could not have discovered the infection at that point in time even if he had re-examined the hand.
Plaintiff appeals, with four assignments of error:
(1) The lower court erred in its factual finding that the defendant, Dr. Brown debrided the wound.
(2) The lower court erred in misconstruing the testimony of the medical experts, regarding the failure to take a proper history, the failure to make a thorough examination; and therefore, determining it was a deep penetrating wound, the failure to treat the wound as contaminated, the failure to leave the wound open, the failure to irrigate it, the failure to debride it, the failure to either hospitalize the patient or instruct the patient to return within twenty-four hours for specific follow-up and the failure to treat or re-examine when the patient returned to the hospital with additional complaints.
(3) The lower court erred in [by] determining as a medical fact that when Mr. Reid returned, his symptoms could not have been symptoms of infection because infection can only manifest itself at its earliest within twenty-four hours and therefore, a failure on the part of Dr. Brown to examine was not causally related to the injury.
(4) The lower court erred by [mis]interpreting the jurisprudential law dealing with diagnosis.
*656 A medical malpractice claim is regulated by LSA-R.S. 9:2794.[1] The plaintiff bears the burden of showing the degree of knowledge or skill ordinarily possessed by general physicians[2] or surgeons in a similar community or locale under similar circumstances. The plaintiff must also prove that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and his best judgment in the application of that skill, and that this lacking or failure caused the harm encountered by the plaintiff. Butts v. Cunningham, 488 So.2d 1169 (La.App. 2d Cir.1986), writ denied 494 So.2d 327 (La.1986); Matthews v. La. State Univ. Medical Center, 467 So.2d 1238 (La.App. 2d Cir.1985).
The local community standards of knowledge, skill and care for general physicians and surgeons are best determined from testimony of other experts in the field. When the medical experts express different views, judgments and opinions on whether the standard of care was met in any given case, the reviewing court will give great deference to a trier of fact's findings. These findings will not be disturbed in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Butts v. Cunningham, supra; Matthews v. La. State Univ. Medical Center, supra.

ASSIGNMENT NO. 1
Appellant's first argument is that the trial judge was clearly wrong in finding that "after debriding it, Dr. Brown sutured the laceration and wrapped the hand." Appellant points out that the emergency room sheet makes no mention of debridement, and neither Reid nor Dr. Brown recalled whether it had been done. Obviously, five years after the treatment took place neither party could have exact recall of the circumstances. Dr. Brown did not recall any details of the incident, and at one point Reid did not remember that his hand had been X-rayed. However, Dr. Brown testified that his interpretation of his own notes on the emergency room sheet was that he had followed the standard operating procedure of irrigating and debriding the wound. We cannot find that the trial judge was clearly wrong in assessing the credibility of the witnesses and choosing to believe the testimony of Dr. Brown. Arceneaux v. Domingue, supra.
Appellant then asserts that Dr. Brown's failure to debride was negligence. He defers this discussion to a later assignment of error, as do we.

ASSIGNMENT NO. 2
Appellant's second assignment of error and the arguments he makes in brief thereunder can be summarized as follows:
Dr. Brown breached the standard of care he owed Reid by:
(1) making an improper diagnosis;
(2) failing to leave the wound open;
(3) not administering antibiotics;
(4) failing to debride the wound; and *657 (5) failing to instruct the patient to see another doctor within 24 hours.
Appellant's contention in subpart one, that the diagnosis was negligently made, can have no effect unless we also find that the resulting treatment that Dr. Brown gave was improper for a known human bite, and therefore the misdiagnosis caused the harm suffered by Reid. Butts v. Cunningham, supra. In light of our resolution of the issue of the treatment by Dr. Brown, analysis of this subpart is unnecessary.
Appellant's second and third arguments in this assignment of error are that Dr. Brown failed to meet the applicable standard of care by closing the wound and by not treating it with broad-spectrum antibiotics. Appellant contends that as a known human bite wound, the laceration should have been left open, and Reid should have been given prophylactic antibiotics. He emphasized that the mouth is a heavily contaminated area with many virulent organisms which render human bites extremely dangerous. The defendants' argument is that the medical testimony established an acceptable alternative treatment: that the wound be closed and no antibiotics administered.
In reviewing the testimony of the experts who testified, we must keep in mind that the function of the appellate court is to determine only whether there is sufficient evidence before the trier of fact to furnish a reasonable basis for its findings where contradiction occurs. We are not to disturb those findings in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Matthews v. La. State Univ. Medical Center, supra.
Dr. Brown testified that there are two schools of thought on the correct way to treat a human bite; the majority school of thought would say the wound should be left open and antibiotics administered, but there are some doctors who would treat a bite wound as he did this one, by closing the wound and not using prophylactic antibiotics. In support of the second school of thought, Dr. Brown referred to an article by Dr. Douglas Lindsay of Tucson, Arizona, who did a study on the closing of bites and advocated both suturing the wound and not using antibiotics.
Dr. Knight, a witness whom the trial judge found to be extremely credible, testified that a human bite wound involving deep penetration over a joint in the hand should be left open, but one which involved only a superficial laceration could be properly treated by suturing and without antibiotic coverage. He stated that there are published incidents in the literature which recommend that antibiotics not be routinely used in prophylactic management of human bite wounds and that the wounds be sutured. He concluded that Dr. Brown rendered sound, reasonable and appropriate care to Reid.
Dr. Haynes testified that there are two schools of thought regarding the treatment of known human bites: the majority advocating leaving the wound open and using antibiotics, with a minority view espousing closing the wound and not using antibiotics. Dr. Haynes stated that he had closed known human bite wounds. He also referred to a study in which Dr. Lindsay indicated that all wounds should be closed and objected to the use of antibiotics. Dr. Haynes was of the opinion that Dr. Brown's treatment of Reid was proper.
Dr. Jones testified that he would treat a human bite wound on the knuckles of the hand by irrigating the wound, giving the patient antibiotics by mouth, and having a follow-up within a day or two. He said that human bite wounds should be left open, although he admitted that there are doctors who do suture human bite wounds to lessen the chance of a secondary infection. He also recognized the line of thought that holds prophylactic antibiotics should not invariably be used for human bite wounds. After examining the records, Dr. Jones concluded that Dr. Brown had treated the wound appropriately.
Dr. McAlister testified that a doctor should not suture a wound resulting from a tooth bite, that it is basically error to suture one, and human bite wounds are to be treated with antibiotics.
*658 Dr. Russell testified that the appropriate standard of care for treating a human bite wound is to clean it well, leave it open, cover it with a dressing, place the patient on broad spectrum antibiotics, and have the patient return each day for a follow-up examination. However, he recognized alternate schools of thought which differ on the question of whether to leave the wound open or close it and whether broad spectrum antibiotics should be administered. Dr. Russell felt that Dr. Brown's treatment fell below the proper standard of care.
In light of this contradictory evidence by the medical experts, we must conclude the trial judge was not manifestly erroneous in finding that suturing the wound and not administering broad spectrum antibiotics was an acceptable method of treating the wound, and that by following this alternative method Dr. Brown did not breach the applicable standard of care. See Frazier v. Dept. of Health & Human Resources, 500 So.2d 858 (La.App. 1st Cir.1986).
The plaintiff's fourth argument in this assignment of error is a continuation of his argument in Assignment No. 1. Appellant contends that the trial court erred in finding that Dr. Brown had debrided the wound, and that this failure to debride breached the standard of care. As we noted in Assignment No. 1, the trial court was not clearly wrong in finding that Dr. Brown had debrided the wound. Alternatively, assuming but by no means holding that appellant's argument in Assignment No. 1 is correct and Dr. Brown did not debride the wound, we would next address the question of whether this failure constituted a breach of the standard of care owed to the patient. Debridement is "the removal of foreign material and contaminated or devitalized tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed." Dorland's Pocket Medical Dictionary, 23rd Edition. All the medical experts testifying stated that debridement was an integral part of the treatment of a bite wound. However, even if we were to conclude that Dr. Brown had negligently failed to debride the wound, there is nothing in the record to show that the infection was a proximate result of this failure. Plaintiff made no showing that there was foreign material or dead tissue in the wound, and no expert testified that failure to debride was a proximate cause of Reid's infection.
Plaintiff's final allegation of malpractice in this assignment of error is that Dr. Brown was negligent in failing to instruct Reid that he should seek medical care within 24 hours. While Dr. Brown testified that his usual practice was to instruct the patient to see Dr. Haynes the next day, Reid testified that he was told to see Dr. Haynes on Wednesday. The emergency room notes did not reflect when Reid was told to see another doctor, but Dr. Brown testified that they showed that he had explained to Reid the signs of infection and told him to return to the hospital if they manifested themselves. Dr. Haynes testified that the follow up should be 48-72 hours after the first treatment because the infection would not have manifested itself before then. Dr. Russell testified that the patient should return every day for an examination by a physician. Dr. Knight stated that he would have seen the patient within 24 hours, and Dr. Jones would have examined the patient within a day or two. However, both Dr. Knight and Dr. Jones also testified that it was sound medical treatment to advise a patient who is a reasonably competent adult of the signs of infection and instruct him to return if those signs become present. It was not manifest error for the trial judge to conclude either that the proper standard of care was established by Dr. Haynes and that Dr. Brown did not breach this standard of care by instructing Reid to return by Wednesday, or that the proper standard of care set forth by Drs. Knight and Jones was met by Dr. Brown when he instructed Reid in the signs of infection and told him to seek medical care if they manifested themselves. Matthews v. La. State Univ. Medical Center, supra.
There is no merit in appellant's second assignment of error.

*659 ASSIGNMENT NO. 3
Appellant contends that the trial judge erred in finding that Dr. Brown's failure to examine Reid's hand when he returned that same night did not breach the standard of care Dr. Brown owed his patient.
Dr. Knight, Dr. Haynes, Dr. Jones and Dr. Russell all testified that when Reid returned to the hospital complaining of pain, the proper procedure would have been to re-examine the wound. It was clear error for the trial judge to find that Dr. Brown had not breached this aspect of the standard of care. Even though the standard of care was not met, however, we accept as not manifestly erroneous the trial judge's finding that the plaintiff did not show that the infection was a proximate result of Dr. Brown's failure to re-examine. While plaintiff was never specific about the time at which the fight occurred, Vivian is only 31 miles from Shreveport, where the fight took place. Reid testified that he was treated at 2:00 or 3:00, so the fight could not have taken place before 1:00 or 2:00 in the afternoon. His second visit, late Sunday evening, could not have been more than eight hours after the first visit. As the court found, the medical testimony at trial was that in that length of time it was more probable than not that the infection would not have manifested itself. Both Dr. Haynes and Dr. Jones, the only witnesses who clearly addressed the point, testified that while it was possible for signs of the infection to appear within eight hours of the injury, it was unlikely. Plaintiff made no showing that the defendant's failure to examine the wound again proximately resulted in the infection and Reid's subsequent difficulties.

ASSIGNMENT NO. 4
Appellant's final assignment of error is apparently nothing more than an extended argument of sub-part one of his second assignment of error. He argues again that the diagnosis was improper, emphasizing the role of the doctor's judgment in making a diagnosis. This issue has been addressed in assignment of error number two.
Our finding that the trial judge was not clearly wrong in denying the plaintiff recovery pretermits the issue of damages.
We affirm the judgment of the court below. Costs of the appeal are assigned to the appellant.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:2794 provides in part:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
* * * * * *
[2] Appellant does not dispute the trial judge's finding that Dr. Brown was acting as a general practitioner, not a specialist.