610 A.2d 964

**Billy JONES and Dorothy Jones, his wife, Appellants,**

v.

**John H. CHIDESTER, M.D., Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1991.

Decided June 17, 1992.

Mark S. Fridkin, Philadelphia, for appellants.

Richard K. Masterson, Norristown, Thomas S. Inman, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We granted review in this case in order to re-examine our test for the defense of the so-called "two schools" doctrine in a medical malpractice case arising in the context of a jury instruction. The necessity of our re-examination arises from

the vacillation of the Superior Court and our Court in applying the appropriate standard.

A medical practitioner has an absolute defense to a claim of negligence when it is determined that the prescribed treatment or procedure has been approved by one group of medical experts even though an alternate school of thought recommends another approach, or it is agreed among experts that alternative treatments and practices are acceptable. The doctrine is applicable only where there is more than one method of accepted treatment or procedure. In specific terms, however, we are called upon in this case to decide once again whether a school of thought qualifies as such when it is advocated by a "considerable number" of medical experts or when it commands acceptance by "respective, reputable and reasonable" practitioners. The former test calls for a quantitative analysis, while the latter is premised on qualitative grounds.

The facts indicate that in November, 1979, Appellant, Billy Jones, underwent orthopedic surgery on his leg performed by Dr. John H. Chidester. In order to create a bloodless field for the surgery, the surgeon employed a tourniquet which was elevated and released at various intervals. Because of subsequent problems with the leg, the patient was referred to a neurosurgeon who determined that Jones had suffered nerve injury to the leg. Additional examinations by other doctors confirmed that the nerve injury had resulted in a condition known as "drop foot."

At trial in June, 1988, Jones complained, *inter alia*, that his nerve injury was the result of Dr. Chidester's use of the tourniquet. Both sides presented testimony by medical experts supporting their positions. Unsurprisingly, Dr. Chidester's experts told the court and jury that his technique was acceptable medically in this particular case, and the plaintiffs' experts insisted that it constituted unacceptable practice.

At the close of the evidence, the court gave the following instruction to the jury:

A physician, then, is excused from an error of judgment only if he has used all of the skills and care required of him

in the treatment of his patient and if he has obtained a complete and accurate factual basis upon which to base the exercise of his judgment.

There is a vast difference between an error in judgment and negligence.

Members of the jury, you have heard one of the plaintiff's (sic) experts testify to the procedure that would be employed during the course of an operation of this type, and I believe his name was Dr. Hyatt, and also you heard from a defense witness who testified as to the type of procedure to be used during this course of operation, and I believe that was the last witness.

Ladies and gentlemen, I instruct you upon this additional principle of law known as the two schools of thought doctrine. This principle provides that it is improper for a jury to be required to decide which of two schools of thought as to proper procedure should have been followed in this case, when both schools have their respective and respected advocates and followers in the medical profession.

In essence, then, a jury of lay persons is not to be put in a position of choosing one respected body of medical opinion over another when each has a reasonable following among the members of the medical community.

Thus, under the two schools of thought doctrine, a physician in the position of Dr. Chidester will not be held liable to a plaintiff merely for exercising his judgment in applying the course of treatment supported by a reputable and respected body of medical experts, even if another body of medical experts' opinion would favor a different course of treatment. Those are the two schools of thought, and that is the two schools of thought doctrine. (R.R., pp. 18–20).

\* \* \* \* \* \*

■ The jury returned a verdict in favor of Dr. Chidester and Jones filed a post-trial motion alleging that he was entitled to a new trial because the court's instruction to the jury on the two schools of thought doctrine was reversible error. At trial and on appeal, Jones argues that under Pennsylvania law, the test for the doctrine is "considerable

number" rather than "reputable and respected" as the court had charged the jury.

We note at the outset of our analysis that there appears to be confusion and contradiction in the use of these standards—a confusion apparent even between the trial court's charge to the jury ("reputable and respected") and its subsequent opinion denying the post-trial motion ("considerable number"):

> Inasmuch as the two schools of thought doctrine applies only to a school of thought advocated by a "considerable number" of reputable and respected physicians, we thus found in light of the testimony of all of the foregoing witnesses (including Plaintiffs' own expert), that there are two schools of thought on the appropriate use of tourniquets during extremity surgery and that the school to which Dr. Chidester adhered during Plaintiff's operation is advocated by a considerable number of reputable doctors. (Slip opinion, pp. 6–7).

The initial modern case in this jurisdiction on the subject of the two schools of thought doctrine was *Remley v. Plummer*, 79 Pa. Superior Ct. 117 (1922). Relevant portions of that opinion are as follows:

> The question actually passed upon by the jury was not whether the defendants, in their handling of the case, had been guilty of negligence in not following a well-recognized and established mode of treatment, but rather, which of two methods, *both having their respective advocates and followers of respectable authority,* was the safer and better from a surgical standpoint. (Emphasis added).

> \* \* \* \* \* \*

> ... [A]nd where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed the course of treatment *advocated by a considerable number* of his professional brethren in good standing in his community. (Emphasis added).

> \* \* \* \* \* \*

> Thus practitioners of a reputable school of medicine are not to be harassed by litigation and mulcted in damages because

the course of treatment prescribed by that school differs from that adopted by another school: (citations omitted) . . . As we said in *Patten v. Wiggin,* [51 Maine 594] *supra,* "The jury are not to judge by determining which school, in their judgment, is the best." "If the treatment is in accordance with a recognized system of surgery, it is not for the court or jury to undertake to determine whether that system is best, nor to decide questions of surgical science on which surgeons differ among themselves:" . . .

The testimony clearly showed a difference of medical opinion expressed by physicians and surgeons of unquestioned standing and reputation, and the defendants were not negligent for having adopted the view held by the majority of their brethren who testified.

*Id.,* 79 Pa.Superior Ct. at 121–123 (citations omitted).

Our first review *of the issue following Remley* dropped all references to the "reputable and respected" test by grounding the decision on "considerable number" language alone:

Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of his professional brethren in good standing in his community.

*Duckworth v. Bennett,* 320 Pa. 47, 181 A. 558 (1935).

In *Tobash v. Jones,* 419 Pa. 205, 213 A.2d 588 (1965), our Court regressed from the *Duckworth* standard and returned to the *Remley* standard when it approved the jury instruction of the trial judge which stated:

Now if you find that under that evidence there are two schools of belief, if you find that there is competent authority, although divided, competent medical authority, subscribed to by reputable and reasonable medical experts, and if you find that Dr. Jones followed one of those lines in performing this laminectomy and in excising that tissue from the spinal cord of Mr. Tobash, then you couldn't say he was negligent for following any of the recognized experts in the field.

In fact, the *Tobash* court totally ignored *Duckworth* and cited *Remley* with approval. 419 Pa. at 217, 213 A.2d at 592. Not until *Brannan v. Lankenau Hospital*, 490 Pa. 588, 417 A.2d 196 (1980), did we have occasion to return to the *Duckworth* rule:

> There is, of course, the longstanding rule that the jury may not decide which of "two methods, both having their respective advocates and followers of respectable authority, was the safer and better from the surgical standpoint." *Tobash v. Jones*, 419 Pa. 205, 217, 213 A.2d 588, 593 (1965), quoting *Remley v. Plummer*, 79 Pa.Super. 117 (1922).

In *Duckworth v. Bennett*, we stated the rule as:

"Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of his brethren in good standing in his community." 320 Pa. 47, 51, 181 A. 558, 559 (1935). Here, appellant's expert initially testified that he knew of no reason to await final diagnosis of esophageal perforation before administering antibiotics. Although on cross-examination the expert indicated that a "small respected body" of medical practitioners believed otherwise, this is a far cry from treatment approved by a considerable number of physicians. Indeed, the expert witness reaffirmed on cross-examination that "the great majority" of physicians would not apply the practice appellee doctors utilized here. Thus, we cannot agree with appellees that Dr. Thompson's testimony alone triggered the application of the *Duckworth* standard regarding "a course of treatment advocated by a considerable number of his brethren."

By contrast, with the exception of *D'Angelis v. Zakuto*, 383 Pa.Superior Ct. 65, 556 A.2d 431 (1989), (the doctrine applies only to a school of thought advocated by "a considerable number" of "reputable and respected physicians"), the Superior Court has held steadfastly to the "reputable, respected" standard. *Tobash v. Jones*, 419 Pa. 205, 213 A.2d 588 (1965) ("if you find that there is competent, although divided, competent medical authority, subscribed to by reputable, respectable

and reasonable medical experts"); *Furey v. Thomas Jefferson University Hospital*, 325 Pa.Superior Ct. 212, 472 A.2d 1083 (1984) ("reputable, respected and reasonable medical experts"); *Trent v. Trotman*, 352 Pa.Superior Ct. 490, 508 A.2d 580 (1986) ("as long as that school of thought is reputable and respected by reasonable experts"); *Morganstein v. House*, 377 Pa.Superior Ct. 512, 547 A.2d 1180 (1988); *Levine v. Rosen*, 394 Pa.Superior Ct. 178, 575 A.2d 579 (1990); *Sinclair by Sinclair v. Block*, 406 Pa.Superior Ct. 540, 594 A.2d 750 (1991) (quoting *Levine, supra*, on "reputable, respectable and reasonable medical experts").

Other jurisdictions also appear to waffle between the two standards. In *McHugh v. Audet*, 72 F.Supp. 394 (M.D., Pa.1947), the "considerable number" test was held to be the test. Some years later, however, another federal court in Pennsylvania cited *Remley* for the proposition that the two schools of thought doctrine is applicable where one is advocated by "reputable, respectable and reasonable" experts. *Harrigan v. United States*, 408 F.Supp. 177 (E.D., Pa.1976). This result should be contrasted with the holding in *Oneill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir., 1975), that the defense is available "when both alternatives have the support of a considerable body of competent medical opinion in the community." *Oneill* followed *Gresham v. Ford*, 192 Tenn. 310, 241 S.W.2d 408 (1951), which construed *Duckworth* and concluded in a quantitative fashion that an accepted alternative treatment is "one advocated by many of the doctors in good standing."

In *Borja v. Phoenix General Hospital, Inc.*, 151 Ariz. 302, 727 P.2d 355 (1986), the court adopted *Furey, supra*, in holding that the doctrine requires only support by a "respectable minority." California has defined its standard as one where "a physician chooses one of alternative accepted methods of treatment, with which other physicians agree." *Meier v. Ross General Hospital*, 69 Cal.2d 420, 434, 71 Cal.Rptr. 903, 445 P.2d 519 (1968). Florida has adopted the "respectable minority" test in *Schwab v. Tolley*, Florida App., 345 So.2d 747 (1977), while Arkansas accepts the doctrine when any alterna-

tive "recognized method" is employed by the physician. *Rickett v. Hayes*, 256 Ark. 893, 511 S.W.2d 187 (1974). Louisiana courts have favored an "acceptable alternative treatment" test. *Reid v. North Caddo Memorial Hospital*, La.App., 528 So.2d 653 (1988). The most recent Connecticut decision exonerates a practitioner who employed a treatment which was "one of choice among competent physicians." *Wasfi v. Chaddna*, 218 Conn. 200, 588 A.2d 204 (1991).

In a similar vein, other states also have refused to adopt a quantitative test. *Gruginski v. Lane*, 177 Wash. 121, 30 P.2d 970 (1934) ("respectable minority"); *Walkenhorst v. Kesler*, 92 Utah 312, 67 P.2d 654 (1937) ("approval of at least a respectable portion of the profession"); *Holton v. Burton*, 197 Wis. 405, 222 N.W. 225 (1928) ("two accepted or recognized methods of treatment").

From this harvest of case law, we glean the following conclusions. First, the qualitative standard is the preferred choice of the Pennsylvania Supreme Court as well as most sister jurisdictions. Second, generally where courts, including our own, have applied *Remley*, there appears to be a blurring of distinctions between quantitative and qualitative standards. Third, in spite of this apparent blurring, our recent decision in *Brannan* seems to have drawn a bright line between the two tests, although the opinion itself employed the language of both tests. Last, it is obvious that the fork in the legal road, splitting off the law in the two directions enumerated herein, was provided by *Remley* itself because subsequent interpretations depended on which paragraph in Remley was adopted as the rule of the case.

 It is incumbent upon us to settle this confusion.[1] The "two schools of thought doctrine" provides a complete defense

---

1. We also note that while proposed jury instruction 10.04, entitled "Differing Schools of Practice" does not include the phrase "considerable number," the subcommittee notes to the instruction quite clearly require a "considerable number." Thus, the proposed instruction when read with the notes is internally inconsistent. We are also aware that practitioners are somewhat confused by the apparent "two schools of thought" on the "two schools of thought" doctrine. *See, e.g.*, M.

to malpractice. It is therefore insufficient to show that there exists a "small minority" of physicians who agree with the defendant's questioned practice. Thus, the Superior Court's "reputable and respected by reasonable medical experts" test is improper. Rather, there must be a considerable number of physicians, recognized and respected in their field, sufficient to create another "school of thought."

Notwithstanding what appears to be conflicting interpretations, we find that both standards have been used appropriately by our precedents. We read *Remley, Duckworth* and, most recently, *Brannan,* to define a school of thought as a "considerable number of reputable and respected physicians." A school of thought should be adopted not only by "reputable and respected physicians" in order to insure quality but also by a "considerable number" of medical practitioners for the purpose of meeting general acceptance even if it does not rise to the level of a majority.

We, therefore, provide the following as a correct statement of the law:

> Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.

█ In recognizing this doctrine, we do not attempt to place a numerical certainty on what constitutes a "considerable number." The burden of proving that there are two schools of thought falls to the defendant. The burden, however, should not prove burdensome. The proper use of expert witnesses should supply the answers. Once the expert states the factual reasons to support his claim that there is a considerable number of professionals who agree with the treatment employed by the defendant, there is sufficient evidence to warrant an instruction to the jury on the two "schools of thought." It then becomes a question for the jury to determine whether

they believe that there are two legitimate schools of thought such that the defendant should be insulated from liability.

Reversed and remanded for a new trial consistent with this opinion.

McDERMOTT and ZAPPALA, JJ., join the majority opinion and also file a concurring opinion.

McDERMOTT, Justice, concurring.

When a physician is charged with employing a course of treatment and it fails of its purpose though properly and carefully administered, the issue becomes whether that treatment was an acceptable medical procedure which the physician was justified in believing would work a cure. The question involved is not was it done negligently, but should it have been done at all. That question is beyond the ability of laymen to answer: whether it were best to chill or heat, use medicines, intervene with scalpel or await nature, or approach from back, front, top or bottom to reach the site of ill, are questions over which doctors disagree. One group of doctors, of skill and competence may withhold the scalpel, another group of equal competence may believe in quick response. When each group has its advocates, and each has its arguable reasons, a doctor of either, cannot be faulted if he properly administers the one to his knowledge and experience seems the better, so long as that group is comprised of a sufficient number of reputable and respected members.

Thus, an isolated expert cannot argue it was his own belief that a procedure was inappropriate, because then this belief would be elevated, against experience and knowledge, to a separate level, though a considerable portion of the world of medicine be against it.

I join in the opinion of the majority.

ZAPPALA, Justice, concurring.

While I join in the opinion, I vehemently disagree with the majority that the existence of two schools of medical thought may ever be a question of fact to be submitted to a jury. The

majority states that, "It then becomes a question for the jury to determine whether they believe that there are two legitimate schools of thought such that the defendant should be insulated from liability." (Majority opinion at 41). It is the responsibility of the trial judge to determine in the first instance whether there are two schools of medical thought so that competent medical authority as to a course of treatment is divided. It is a question of law for the trial judge. It is not a question of fact. In all other respects, I agree with the majority's analysis of the two schools of medical thought doctrine.