**Pino v. Pocono Medical Center**

---

C.P. of Monroe County, No.7159 CV 2009

*Joel J. Feller*, for plaintiffs.

*Steven D. Costello* and *Michael P. Perry*, for defendants.

ZULICK, *J.*, November 7, 2013—This is a medical malpractice claim involving the treatment and care of Joseph A. Pino, Jr. Mr. Pino was taken to Pocono Medical Center (PMC) after experiencing shortness of breath on October 4, 2008. Mr. Pino's condition worsened after he was admitted to the emergency department. He was intubated by the attending emergency room doctor, Matthew Nelson, D.O. but unfortunately suffered cardiac arrest shortly thereafter, which eventually led to his death on October 17, 2008. Mrs. Linda Pino sued Dr. Nelson, PMC, the hospital's parent company, Pocono Health System, and the practice group Doctor Nelson worked in, Pocono Emergency Physicians, alleging that Dr. Nelson committed medical malpractice in his treatment of Mr. Pino. Mrs. Pino asserted that Dr. Nelson failed to take necessary action, including intubation, soon enough to improve Mr. Pino's respiratory condition. Dr. Nelson denied liability, and argued that he acted within the standard of care. Before trial, Mrs. Pino reached a settlement with the hospital and its parent company.

The case was tried before a jury on April 22-29, 2013. The trial concluded with a verdict in favor of Dr. Nelson and Pocono Emergency Physicians. Mrs. Pino filed a timely post-sentence motion, challenging numerous rulings during the trial, seeking both a new trial and a judgment notwithstanding the jury verdict. The issues raised by Mrs. Pino include: (1) a new trial should be granted because the "Two Schools of Thought Doctrine" (hereafter TSTD) instruction was inappropriate as it was unsupported by the evidence and in contravention of Pennsylvania law, (2) a

new trial should be granted because the plaintiff was not informed of the pending TSTD instruction before it was given, preventing her from having the chance to object, (3) a new trial should be granted because defense counsel made repeated references to Mr. Pino's prior hospitalizations, in contravention of court orders forbidding such references, (4) a new trial should be granted because defense counsel repeatedly referenced the "vast majority" of patients with a condition similar to Mr. Pino in order to establish the standard of care, (5) a new trial should be granted because defense counsel made repeated arguments and inferences that the nursing staff violated the standard of care, despite defendants having no claim against the hospital or its staff, (6) a new trial should be granted due to bias or an appearance of bias on behalf of the court, (7) a new trial should be granted because the verdict was against the weight of the evidence, and (8) the plaintiff should be granted judgment notwithstanding the verdict because the evidence at trial required a finding in favor of the plaintiff.

Defendants answered, supporting the verdict, and both parties filed briefs in support of their position. The matter was argued before the court on August 26, 2013.

## DISCUSSION

Mrs. Pino she seeks the remedy of a new trial. "Trial courts have broad discretion to grant or deny a new trial." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000). "The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all

legal proceedings." *Domon v. McCarthy*, 195 A.2d 520, 522 (Pa. 1963).

Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Harman*, 756 A.2d at 1122 (internal citations omitted).

Ms. Pino's first argument is that the court improperly issued a TSTD instruction at the end of the trial. While the TSTD doctrine has existed in Pennsylvania since the 1920's, the modern iteration of the doctrine was announced by the Supreme Court in *Jones v. Chidester*, 610 A.2d 964 (Pa. 1992). In *Jones*, a defense verdict followed a TSTD instruction. The Supreme Court decided to review the case to clear up confusion about the applicable standard for when a TSTD instruction is appropriate. The Court stated:

We, therefore, provide the following as a correct statement of the law:

> Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.

*Jones*, 610 A.2d at 969. Further,

> In recognizing this doctrine, we do not attempt to place a numerical certainty on what constitutes a "considerable number." The burden of proving that there are two schools of thought falls to the defendant. The burden, however, should not prove burdensome. The proper use of expert witnesses should supply the answers. Once the expert states the factual reasons to support his claim that there are a considerable number of professionals who agree with the treatment employed by the defendant, there is sufficient evidence to warrant an instruction to the jury on the two "schools of thought." It then becomes a question for the jury to determine whether they believe that there are two legitimate schools of thought such that the defendant should be insulated from liability.

*Id.* While there have been several cases involving TSTD instructions since *Jones*, they have not materially altered the *Jones* standard.

In the present case, Mrs. Pino argues that the factual posture of the case should have precluded a TSTD instruction. Additionally, she argues that even were such an instruction appropriate based on the factual underpinnings of the case, the defendant failed to make the requisite showing such that a TSTD instruction could be properly given.

Plaintiff first argues that the TSTD instruction was inappropriate because there was no agreed-upon diagnosis of Mr. Pino's condition. "The [two schools of thought doctrine] is applicable only where there is more than one accepted method of treatment or procedure." *Choma v. Iyer*, 871 A.2d 238, 241 (Pa. Super. 2005). In other words, "where...the dispute is not to the course of treatment, but rather to a question of fact regarding plaintiff's condition, the "two schools of thought" doctrine is inapplicable." *Id.* Plaintiff has attempted to characterize this case as one of misdiagnosis. Plaintiff contends that Dr. Nelson failed to adequately diagnose the dire respiratory crisis of Mr. Pino and act accordingly.

There was substantial evidence before the jury to allow them to find otherwise. All parties agreed that Mr. Pino was suffering from a respiratory crisis caused by congestive heart failure (CHF). Dr. Nelson testified that Mr. Pino was in respiratory distress caused by his CHF. NT, Vol. II at 169. Most importantly, plaintiff's expert witness on the standard of care, Dr. Corboy, stated both that Mr. Pino had congestive heart failure and that every person involved with Mr. Pino's care recognized he was in respiratory crisis.[1] N.T. Vol. III at 9-10, 57. There was a difference of expert opinion on the appropriate treatment of a CHF patient in respiratory distress, but not on the diagnosis of CHF.

---

1. Q: Sir, in this case every person who laid a hand on Mr. Pino, they all recognized he was in a respiratory emergency, was hypoxic, and in respiratory distress based on your review?

Dr. Corboy: Yes, based on my review of Dr. Nelson's notes and Nurse Roland's and Nurse Oliva's testimony, everyone, and the record itself, everyone acknowledged he was in respiratory crisis.

N.T. Vol. III at 9-10.

Plaintiff next objects that Dr. Nelson did not establish the factual basis to support a TSTD instruction. The factual basis to support such an instruction was articulated in *Jones, supra.* An expert witness must supply the factual basis for his contention that a considerable number of professionals support the method of treatment used. *Jones,* 610 A.2d at 969. While the burden is on the defendant, the burden should not be "burdensome." *Id.*

The testimony supporting the TSTD instruction was supplied by Dr. Karras, defendant's standard of care expert. The following exchanges formed the factual basis for the TSTD instruction.

Q: Dr. Nelson, at that point, based upon his own history, and physical exam, sir, considered intubating the patient at that time, correct?

A: That's what he said in his deposition testimony.

Q: Right. And that would have been an appropriate consideration, correct?

A: Absolutely.

N.T. of Dr. Karras at 131-32.

Q: And your opinion is that based upon Nelson's documentation and testimony, it was entirely reasonable to defer intubation for a few minutes to assess Mr. Pino's response to medical therapy to see if he failed to respond to the oxygen, correct?

A: And to the medications, yes.

N.T. of Dr. Karras at 132-33.

Q: So when you put this package together, when a patient had not responded for the 19 minutes or so that he's there before he leaves the patient's bedside in this crisis, which we'll talk about in a minute, there were other options for respiratory support, correct?

A: Yes.

Q: And Dr. Nelson testified about a concern he had for intubating him at that point. And we can talk about that, but to the extent he had any concern about intubating a patient that he was considering a problem at the time, there are even other methods to attempt to improve oxygenation and ventilation, especially for a patient who has an underlying condition of congestive heart failure, correct?

A: Yes.

Q: What interventions are available to you, even if you, for whatever reason, don't want to intubate? What's available to you?

A: Positive pressure ventilation is available.

N.T. of Dr. Karras at 140-41.

Q: And Dr. Nelson considered intubation as a means of intervening for the — for the respiratory condition, correct?

A: Yes.

Q: And had he done it at that time, based upon what he's told us, he saw, based upon his own history and physical, it would have been appropriate for him to do that at that time, correct?

A: Yes.

Q: And that would have been within the standard of care to intubate him at his initial visit, based upon his history and physical, correct?

A: Yes.

N.T. of Dr. Karras at 143.

This testimony from Dr. Karras clearly states his opinion that there were at least two appropriate methods to treat Mr. Pino, given his presentation. According to Dr. Karras, Dr. Nelson could have undertaken the course of treatment he did, namely monitor the patient and treat with medicines and non-pressurized oxygen. He could have also intubated the patient immediately, or he could have used positive pressure ventilation. While Dr. Karras did not specifically state that a given number of other medical professionals would agree with the course of treatment prescribed by Dr. Nelson, the lack of such a rote statement should not prevent a TSTD instruction, by itself. Dr. Karras is a well-qualified expert in emergency medicine, who frequently gives lectures and also teaches medical students and residents. His testimony that there are multiple acceptable methods to treat a patient in Mr. Pino's condition supplies the factual basis for the TSTD instruction.

This conclusion is further buttressed by a reading of *Wetzel v. Shaffer*, 75 Pa. D. & C.4th 263 (Pa. Com. Pl. 2005) *aff'd. Wetzel v. Shaffer*, 919 A.2d 985 (Pa. Super. Jan 08, 2007) (Table, No. 1966 MDA 2005). In *Wetzel*, a TSTD instruction was upheld on very similar facts to the case at bar. There, the defense expert merely stated

that in the "vast majority" of cases, the treatment chosen by the treating physician would have cured the patient's ailment. *Id.* at 270. The case at bar is similar to *Wetzel* in that the evidence supporting the TSTD instruction was not formulaic. However, considering the Jones holding that the evidentiary support for the instruction should not be burdensome, the court finds that here, as in *Wetzel*, that burden has been met and a TSTD instruction was properly given.

As the court has determined that there was a sufficient evidential basis for the TSTD instruction, Mrs. Pino's contentions that said instruction severely prejudiced her are without merit. Likewise, plaintiff's contention that the court did not disclose the intent to give the instruction at the charge conference must fail. The TSTD instruction was included in the written proposed instructions presented to the court by Dr. Nelson at the time of the pretrial conference. *See Proposed Points for Charge of Defendants Matthew Nelson, D.O. and Pocono Emergency Physicians* at 17. Both parties were aware that the instruction was requested. Plaintiff had the opportunity at the conference to object to the instruction before the conference concluded, which plaintiff did not do.

Mrs. Pino next objects to defense counsel's references to Mr. Pino's past hospitalizations. Defendant's counsel referenced those visits in two different ways. First, counsel referenced them in some instances to attempt to show that Mr. Pino had been treated successfully using methods similar to those employed by Dr. Nelson in his prior hospitalizations. Plaintiff's counsel objected to the introduction of this evidence, and was sustained. Plaintiff did not move for a mistrial. Without a request

for a mistrial, the request for a new trial now comes too late. *See McMillen v. 84 Lumber*, 649 A.2d 932 (Pa. 1994) (request for new trial is waived if successful objection is not coupled with request for a mistrial). Even were the issue not waived, the court does not find that the prejudice was of the level that would require a new trial be granted.

Defense counsel also referenced Mr. Pino's prior hospitalizations when discussing damages. Defendant's expert attempted to show that there was a correlation between the number of hospital visits a CHF patient experiences and that patient's life expectancy. Defendant's expert testified that after a certain number of hospital visits, the survival rate of CHF patients decreased markedly. *Testimony of Dr. Walinsky*, N.T. Vol. V at 39. This medical evidence was offered by the defendant contradict the life expectancy determinations of plaintiff's experts.

The references made by defense counsel to Mr. Pino's prior hospitalizations were limited, and were only permitted for the purpose of addressing damages. In those circumstances where defense counsel otherwise alluded to those hospitalizations, plaintiff's objections were sustained. Therefore, the court cannot say that plaintiff was prejudiced by defense counsel's references to Mr. Pino's prior hospitalizations. No motion for mistrial was made. A new trial will not be granted on that basis.

Mrs. Pino contends that a new trial should be awarded based on defense counsel's repeated references to the "vast majority" of CHF patients, and how they respond to certain treatments. Specifically, Dr. Karras, an expert witness for the defendant, stated that the "vast majority" of patients with CHF respond favorably to the type of

treatment rendered by Dr. Nelson.

Plaintiff's argument must fail for two reasons. First, doctors do not, and cannot, treat each new patient in a vacuum. Prior experiences do and must inform their decision making. Therefore, some reference to what appears to be a standard treatment for CHF patients is appropriate. Second, these references cannot be said to prejudice the plaintiff to the point that a new trial is appropriate. Defendant never argued that just because the "vast majority" responds well to a treatment, that fact alone absolves Dr. Nelson of responsibility. Defendant' witnesses clearly stated numerous times throughout the trial that each patient is an individual, who needs individual care and attention based upon their particular presentation. Further, plaintiffs continually asserted that Mr. Pino's presentation upon arriving at PMC on October 4, 2008 was quite different, and more severe, than the "vast majority" of cases. As the sporadic references by the defense to the "vast majority" of cases did not prejudice the plaintiff, a new trial will not be awarded on that basis.

Plaintiff's next objection is that defense counsel contended that the nursing staff was negligent in. their care of Mr. Pino. This argument lacks merit. A review of the record does not disclose any circumstances where defense counsel challenged the conduct of the nursing staff. Defense counsel did reference, both in remarks and during questioning of the nursing staff members, a "team approach" undertaken by doctors and nurses. However, it would be odd indeed if doctors and nurses did not work together in the treatment of a patient. Beyond those innocuous remarks, there is no evidence that defendant impermissibly attacked the actions of the nurses. As

such, there is no error, and this will not be the basis for a new trial. Plaintiff makes no reference in her brief to an objection that was not sustained or a request for mistrial on this basis.

Plaintiff requests a new trial as she contends that extraneous factors improperly influenced the jury. Plaintiff contends that the court was biased, or appeared so, in its administration of the trial. However, as both plaintiff's and defendant's briefs aptly note, numerous important objections were sustained in plaintiff's favor throughout the trial. Further, without any concrete and specific examples of this claimed bias, it I am not able to respond in a meaningful way other than to say that I am not aware of such a bias for or against either party at any point during the proceedings. Plaintiff's objection will be denied.

Next, Mrs. Pino requests a new trial because the verdict was against the weight of the evidence. "A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice." *Betz v. Erie Ins. Exchange*, 957 A.2d 1244, 1252 (Pa. Super. 2008) (quoting *Thomas Jefferson University v. Wapner*, 903 A.2d 565, 576 (Pa. Super.2006)). Here, aside from the fact that Mr. Pino entered the hospital at 6:05 P.M. in respiratory distress while suffering from apparent congestive heart failure, other material facts were in dispute. The plaintiff presented credible expert testimony that Dr. Nelson was negligent in failing to intubate Mr. Pino earlier. The defendant presented credible expert testimony to the effect that the course of treatment undertaken by Dr. Nelson was proper and within the standard of care. The jury was free to believe either party's explanation of the case. That they

chose to believe Dr. Nelson and his experts does not shock the court's sense of justice. Therefore the verdict was not against the weight of the evidence.

Finally, Mrs. Pino seeks judgment notwithstanding the verdict.

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*V-Tech Services Inc. v. Street*, 72 A.3d 270, 275 (Pa. Super. 2013) (quoting *O'Kelly v. Dawson*, 62 A.3d 414, 419 (Pa. Super. 2013)). Here, considering the conflicting nature of the evidence, the court cannot say there was no basis for the jury verdict. Viewing the record in the light most favorable to Dr. Nelson, there was sufficient evidence to

support a jury verdict in his favor. Accordingly, plaintiff's request for judgment notwithstanding the verdict is denied.

## ORDER

And now, this 7th day of November, 2013, upon consideration of plaintiff's post-trial motion, and the arguments and briefs of both parties, it is ordered that the post-trial motion is denied.