Helen CHOMA and Michael Choma, h/w, Appellants,

v.

Manny S. IYER, M.D., Appellee.

Superior Court of Pennsylvania.

Argued Nov. 9, 2004.

Filed March 16, 2005.

---

Richard P. Abraham, Philadelphia, for appellants.

Sheila A. Haren, Philadelphia, for appellee.

BEFORE: DEL SOLE, P.J., HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, LALLY–GREEN, TODD, KLEIN and BOWES, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 Appellants, husband and wife,[1] appeal a judgment entered in favor of Appellee, Manny Iyer, M.D., following a jury trial in a medical malpractice action. We are asked to review two questions: whether the trial court erred in charging the jury on the "two schools of thought doctrine" and whether the jury's verdict on the informed consent claim was contrary to the weight of the evidence. We find no reason to disturb the trial court's dismissal of Appellant's challenge to the weight of the evidence, but we find an award of a new trial is required because the jury was improperly instructed on a doctrine which did not apply to the facts of the case.

¶ 2 Dr. Iyer performed a type of breast reconstruction, known as a TRAM flap procedure, on Appellant following a mastectomy for breast cancer. The procedure done on her left breast used muscle and other tissue from her abdomen. Significant complications later arose resulting in scarring and deformity at the abdominal site and requiring skin grafting from Appellant's thigh area. The complications necessitated four additional surgical procedures.

¶ 3 Appellants later brought an action against Dr. Iyer claiming that he was negligent in his decision to perform a TRAM flap procedure where it was contra-indicated by Appellant's medical history, and that he failed to obtain her informed consent to the procedure. The jury returned a verdict in favor of Dr. Iyer, specifically finding that he was not negligent and that he did not fail to obtain Appellant's informed consent. Post-trial motions were later filed and denied. This appeal followed.

¶ 4 Appellants' initial claim concerns the appropriateness of the court's charge to the jury on the "two schools of thought" doctrine. Appellants contend the instruction was not warranted based upon the facts and expert opinion produced at trial.

---

1. References to Appellant, singularly, are to Mrs. Helen Choma.

¶ 5 The "two schools of thought" doctrine provides a complete defense to a malpractice claim. *Levine v. Rosen*, 532 Pa. 512, 616 A.2d 623, 627 (1992). It directs that where "competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise." *Jones v. Chidester*, 531 Pa. 31, 610 A.2d 964, 969 (1992). The doctrine is applicable only where there is more than one accepted method of treatment or procedure. *See Levine v. Rosen* (finding the "two schools of thought" instruction appropriate where the evidence established that there were a considerable number of respected physicians who subscribed to each school of thought—regular vs. yearly mammograms).

¶ 6 The question presented at trial was whether the TRAM flap procedure performed on Appellant was an appropriate form of reconstructive surgery given Appellant's body weight and medical history. The trial court found that the diagnosis of breast cancer was agreed upon and the only question concerned the method of treatment between a TRAM flap procedure and other forms of reconstruction surgery. It found that one school of thought was presented by Appellants who offered the testimony of experts indicating that because Appellant was obese the TRAM flap procedure was counterindicated. It further found that a second school of thought was offered by Dr. Iyer through the testimony of his expert who testified that the TRAM flap procedure was an appropriate procedure to perform on Appellant. Given this testimony, the trial court ruled that Dr. Iyer met his burden of proving the application of the "two schools of thought" doctrine.

¶ 7 Our review of the evidence offered at trial does not support the trial court's assessment of the evidence and the application of the doctrine. The evidence in this case does not reflect that there were two approaches to treatment. Nor did the experts agree on the diagnosis. The underlying cancer condition was not at issue in this procedure for breast reconstruction. At issue was whether Appellant was extremely obese. Both sides recognized that obesity significantly increases the risks of failure of a TRAM flap procedure, yet they disagreed as to whether Appellant was extremely obese. Appellants' expert Dr. Grayson stated that Appellant was not a candidate for TRAM flap reconstruction because of her obesity, history of smoking and previous gall bladder and appendectomy surgeries. N.T., 2/13/03, at 51. Dr. Iyer's expert, Dr. Murphy, opined that the procedure was not contra-indicated for Appellant. During his own testimony Dr. Iyer stated that he would not do this procedure on morbidly obese people. N.T., 2/12/03, at 22. However, he opined that Appellant was "moderately" but not "overly" obese and that in his assessment, her weight did not present a high risk. N.T., 2/13/03 at 204, 215; N.T., 2/14/03, at 19. Thus both sides agreed that the TRAM flap procedure is an appropriate form of reconstructive surgery, and that it is contra-indicated where the patient is extremely obese. The disputed question was whether Appellant was extremely obese.

¶ 8 Where as here, the dispute is not to the course of treatment, but rather to a question of fact regarding plaintiff's condition, the "two schools of thought" doctrine is inapplicable. The courts, when presented with similar factual questions, have consistently held that a jury instruction on the "two schools of thought" is in error.

¶ 9 In *Morganstein v. House,* 377 Pa.Super. 512, 547 A.2d 1180 (1988), the appellant's decedent died as a result of undiagnosed unstable angina. The decedent had presented to his physician with complaints of pain, and an EKG was administered and nitroglycerine was prescribed. Several days later he collapsed and died. At trial the experts did not dispute the propriety of the specific treatment ordered, as they both agreed on the usefulness of nitroglycerine under certain circumstances. However, the jury was to determine if Dr. House should have diagnosed the decedent's condition as an unstable angina. It held that this was an issue of fact for the jury, and to instruct the jury regarding two schools of medical thought was inappropriate and warranted a new trial. It cited to a Supreme Court decision which found: "where medical experts in a case agree as to the recognized and established proper treatment for a particular type injury but there is a dispute as to whether the plaintiff had that type of injury, the latter question is one of fact for the jury." *Id.* at 1183, *citing Hodgson v. Bigelow,* 335 Pa. 497, 7 A.2d 338 (1939).

¶ 10 Both *Morganstein* and *Hodgson* were cited in *D'Angelis v. Zakuto,* 383 Pa.Super. 65, 556 A.2d 431 (1989), where a new trial was ordered after the jury was instructed on the "two schools of thought" doctrine. Therein a young child went into cardiopulmonary arrest and died after twice seeking treatment from the defendant doctor, who prescribed an antibiotic and cough suppressant based upon the child's symptoms. A post mortem exam revealed that the child had suffered from acute and chronic pneumonia of the left lung. On appeal the court noted that the experts did not disagree on the treatment, but the question for the jury to consider was whether the doctor should have identified the condition as pneumonia. Because the issue was not the propriety of the specific treatment ordered, but rather whether the physician's failure to recognize a familiar disease was negligence, instructions on "two schools of thought" was reversible error.

¶ 11 Even more analogous to the instant case is *Bonavitacola v. Cluver,* 422 Pa.Super. 556, 619 A.2d 1363 (1993), *rev'd on other grounds, Johnston the Florist, Inc. v. TEDCO Constr. Corp.,* 441 Pa.Super. 281, 657 A.2d 511 (1995). Therein, the plaintiff's decedent was treated by the defendant-dentist without being prescribed penicillin as was the usual practice. The dentist incorrectly believed that the procedure to be performed would not involve bleeding. However, it did, and the decedent developed bacterial endocarditis, which ultimately led to his death. The dentist argued on appeal that the trial court erred in not instructing the jury regarding the "two schools of thought" doctrine. The court found the doctrine inapplicable. It concluded that the various experts presented a consistent school of thought: that an antibiotic should be given if there was a likelihood of bleeding. It ruled that the disputed question, of whether the scheduled procedure would induce bleeding, was one of fact. Accordingly, it affirmed the trial court's decision refusing to charge the jury on the "two schools of thought" doctrine.

¶ 12 In this case, the experts agreed as to the usefulness of a TRAM flap procedure for reconstructive breast surgery and the essential protocol for the procedure, including its purpose, its attendant risks and the factors that would increase those risks. The experts and defendant himself also agreed that the TRAM flap procedure should not be performed on extremely obese people because substantial weight is a significant risk factor. The dispute in this case centered on whether the risks factors were present, and the degree of

Appellant's obesity. This expert testimony did not present "two schools of thought" on the appropriate treatment to be applied; however, it did reveal two different assessments of the patient's pre-operative condition. The experts in this case did not present divergent opinions on how to treat the patient; in essence the same school of thought was applied to two different patients: one moderately obese and one extremely obese. Much like in *Bonavitacola,* where it was recognized that an antibiotic should be given if bleeding was likely to occur, and the jury was to determine if the procedure performed upon the decedent was likely to induce gingival bleeding, the jury in this case learned that the TRAM flap procedure was not indicated for extremely obese individuals and it was for the jury to then make a factual determination if Appellant met the criteria for being extremely obese. This factual finding of Appellant's pre-operative condition was for the jury to make without application of the doctrine.

¶ 13 It is well established that a trial judge is bound to charge the jury only on the law applicable to the factual parameters of a particular case and that it may not instruct the jury on law inapplicable to the matter before it. *Schaefer v. Stewartstown Dev. Co.,* 436 Pa.Super. 354, 647 A.2d 945, 947 (1994). A new trial will be warranted if a jury instruction is fundamentally erroneous and may have been responsible for the verdict. *Chanthavong v. Tran,* 452 Pa.Super. 378, 682 A.2d 334, 340 (1996). Because the inapplicable instruction may have contributed to the verdict in this case, a new trial on negligence is required. *See Morganstein,* 547 A.2d at 1183, *D'Angelis,* 556 A.2d at 434.

¶ 14 In their second issue Appellants claim the jury's verdict, which rejected the claim of informed consent, was against the weight of the evidence. A new trial will not be granted on the basis of a weight of the evidence claim unless the evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice. *Brindley v. Woodland Village Restaurant,* 438 Pa.Super. 385, 652 A.2d 865 (1995). This Court will reverse the action of the trial court in ruling on a claim based on a challenge to the weight of the evidence only if it determines that it acted capriciously or palpably abused its discretion. *Id.* The decision of whether to grant a new trial based upon a claim that the verdict is against the weight of the evidence rests with the trial court. *Dierolf v. Slade,* 399 Pa.Super. 9, 581 A.2d 649, 652 (1990). A new trial should not be granted where the evidence is conflicting and the jury could have found for either party, or where the trial judge would have reached a different conclusion on the same facts. *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 265 A.2d 516 (1970).

¶ 15 Appellants assert that Dr. Iyer did not inform Appellant of the increased risk of complications due to her obesity and history of smoking. They also claim that he failed to inform Appellant of the allegedly significantly lower risks attendant to alternative procedures. Appellant testified in support of this position.

¶ 16 In reviewing Appellants' challenge to the verdict as being against the weight of the evidence, the trial court found that while Appellant presented evidence that she was not adequately informed, Dr. Iyer testified to the contrary. The trial court reasoned that because the credibility of witnesses is to be decided by a jury, there was ample evidence to support the jury's finding.

¶ 17 As noted, Dr. Iyer did not view Appellant's obesity as creating an increased risk of complications, and he testified that he discussed with Appellant the possible complications of fat necrosis, healing problems, partial flap loss, and total flap loss. N.T., 2/13/03, at 208–209. In addition, defense expert Dr. Murphy testified that Dr. Iyer discussed the TRAM flap procedure and the major complication in a "very adequate manner." *Id.* at 134. Dr. Iyer also testified that he discussed alternatives to the TRAM flap procedure involving implants, but he discontinued the discussion when Appellant advised him that she did not want implant reconstruction. N.T., 2/11/03, at 206–207. Appellant admitted at trial that she advised Dr. Iyer that she did not wish to have an implant because of how it would look, but also testified that she would have agreed to surgery with implants had she understood that it possessed lower risks. N.T., 2/14/03, at 7, 15.

¶ 18 In order to succeed on an informed consent claim, a patient must establish that: (1) the doctor failed to disclose all material facts before obtaining the patient's consent to a particular medical procedure; and (2) this undisclosed information would have been a substantial factor in the patient's decision whether to undergo the procedure. *Hohns v. Gain*, 806 A.2d 16, 19–20 (Pa.Super.2002). In this case there was a dispute by the experts as to whether Appellant's pre-operative condition put her at an increased risk. This question, as well as the question of whether Appellant would have chosen a different procedure if she was provided certain information, were matters of credibility for the jury to determine. The jury, as the finder of fact, was free to believe all, part or none of the testimony presented. *Odato v. Fullen*, 848 A.2d 964, 966 (Pa.Super.2004). On the record before us we cannot find that the trial court palpably abused its discretion in rejecting Appellants' claim that the verdict was against the weight of the evidence.

¶ 19 Accordingly, we reverse and remand this matter for a new trial solely on Appellants' claims of negligence.

¶ 20 Reversed. Case remanded. Jurisdiction relinquished.

¶ 21 LALLY–GREEN, J. files a concurring opinion.

CONCURRING OPINION BY LALLY–GREEN, J.:

¶ 1 I agree with the Majority that the trial court erred by charging the jury on the "two schools of thought" doctrine. I respectfully disagree, however, with the Majority's analytical approach. Thus, I concur.

¶ 2 In 1992, our Supreme Court thoroughly reviewed the "two schools of thought" doctrine. *Jones v. Chidester*, 531 Pa. 31, 610 A.2d 964 (1992). First, the Court explained the general contours of the doctrine:

A medical practitioner has an absolute defense to a claim of negligence when it is determined that the prescribed treatment or procedure has been approved by one group of medical experts even though an alternate school of thought recommends another approach, or it is agreed among experts that alternative treatments and practices are acceptable. The doctrine is applicable only where there is more than one method of accepted treatment or procedure.

*Id.* at 965. After reviewing competing views on what constitutes a "school of thought," the Court set forth the following principles as "a correct statement of the law":

Where competent medical authority is divided, a physician will not be held

responsible if in the exercise of his judgment he followed a course of treatment advocated by **a considerable number of recognized and respected professionals** in his given area of expertise.

*Id.* at 969.

¶ 3 The Court then set forth the proper procedure for determining when trial courts should issue a "two schools of thought" jury instruction:

In recognizing this doctrine, we do not attempt to place a numerical certainty on what constitutes a "considerable number." The burden of proving that there are two schools of thought falls on the defendant. The burden, however, should not prove burdensome. The proper use of expert witnesses should supply the answers. Once the expert states the factual reasons to support his claim that there is a considerable number of professionals who agree with the treatment employed by the defendant, there is sufficient evidence to warrant an instruction to the jury on the two "schools of thought." It then becomes a question for the jury to determine whether they believe that there are two legitimate schools of thought such that the defendant should be insulated from liability.

*Id.*

¶ 4 The Majority correctly asserts that the "two schools of thought" doctrine is inapplicable when there is only one accepted treatment, and the critical question is whether the patient is a suitable candidate for that treatment. Majority Opinion at 242–43, *citing, inter alia, Morganstein v. House,* 377 Pa.Super. 512, 547 A.2d 1180 (1988) (parties agreed on the proper treatment for unstable angina, but disagreed about whether the defendant doctor should have diagnosed the patient's condition as unstable angina); *D'Angelis v. Zakuto,* 383 Pa.Super. 65, 556 A.2d 431 (1989) (parties

agreed on the proper treatment for pneumonia, but disagreed as to whether the doctor should have diagnosed the pneumonia); *Bonavitacola v. Cluver,* 422 Pa.Super. 556, 619 A.2d 1363 (1993) (parties agreed that antibiotics are appropriate if there is a likelihood of bleeding during a dental procedure, but disagreed as to whether the dentist should have predicted that the patient would bleed).

¶ 5 The Majority argues that the instant case is analogous to *Morganstein, D'Angelis,* and *Bonavitacola.* The Majority reasons: "both sides agreed that the TRAM flap procedure is **an** appropriate form of reconstructive surgery and that is it contra-indicated where the patient is extremely obese. The disputed question was whether Appellant was extremely obese." Majority Opinion at 241 (emphasis added).

¶ 6 Respectfully, I disagree with this reasoning. The record fails to reflect that both sides agreed that the TRAM flap procedure was the **only** appropriate form of reconstructive surgery in this case. Rather, both sides recognized that there was more than one method of reconstructive surgery for a mastectomy. These methods included the TRAM flap procedure, breast implants, and a procedure where the breast is reconstructed from muscle tissue from the patient's back. All of these procedures have their own risks and benefits. The patient's weight was one factor among many that a reasonable physician would consider in choosing any of these procedures. In my view, the instant case does not fall neatly within the *Morganstein, D'Angelis,* and *Bonavitacola* line of cases.

¶ 7 I come to the same result as the Majority, but through different reasoning. I would hold that Dr. Iyer failed to establish that two "schools" of thought exist on any issue in this case. Dr. Iyer presented

246

the expert opinion of Dr. Murphy, who essentially stated that Dr. Iyer's choice to perform the TRAM flap procedure fell within the standard of care. Dr. Murphy offered only his own opinion on this matter. Dr. Murphy never even attempted to show that there were "a considerable number of recognized and respected professionals in his given area of expertise" who agree with Dr. Iyer's choice of treatment. *Jones,* 610 A.2d at 969.

¶ 8 The trial court found that there were two "schools of thought" because the defense's expert disagreed with the plaintiff's expert. *Jones* teaches that one expert, no matter how accomplished, is not a "school." Further, I agree with the Majority that the instruction may have been responsible for the verdict.

¶ 9 Accordingly, I concur in the result.