**Mollenhauer v. Glat**

*Barton A. Haines,* for plaintiff.
*Timothy I. McCann,* for defendant.

DiVITO, *J.,* October 3, 2006—

## PROCEDURAL HISTORY

This instant medical malpractice action arose out of a lawsuit filed by the parents of Leah Mollenhauer against Paul M. Glat M.D. on her behalf, for injuries allegedly caused by the doctor while treating Leah for a congenital defect. The matter was tried before this court and a jury in September of 2005. At the conclusion of the trial, the jury awarded Leah $550,000.

Following the recording of the verdict, both parties filed post-verdict motions, which this court denied. Appeals were thereafter filed by both parties as were requested 1925(b) statements.

## FACTUAL HISTORY

Plaintiff, Leah Mollenhauer, was born on October 15, 1999. At the time, she was diagnosed as having a cleft palate and Pierre Robins sequence, a condition which

results in certain facial abnormalities, including a small jaw, a recessed chin, and a mispositioned tongue that obstructs the air passage.

Following her birth, her parents, Donna and Frank Mollenhauer, had her seen by Paul M. Glat M.D. at St. Christopher's Hospital in Philadelphia. Dr. Glat, a plastic surgeon, was the head of the cleft palate group at St. Christopher's Hospital.

On account of her malpositioned tongue, Leah was prone to suffering blockages of her air passageway. Her parents, however, by the use of various techniques and careful positioning of Leah, were able to alleviate the problem.

On November 10, 1999, while driving Leah to see Dr. Glat, Leah suffered a blockage of her airway, which was caused by the fact that she was required to sit upright in a car seat for the ride to Dr. Glat's office. The situation was quickly ameliorated by Mrs. Mollenhauer, who was able to get Leah to breath normally again by placing her across her (Mrs. Mollenhauer's) knee and through the administering of oxygen to Leah.

As a result of the incident, Dr. Glat recommended to the Mollenhauers that Leah undergo a tongue-lip adhesion, a procedure whereby the patient's tongue is sutured to his or her lower lip, where it is held in place by strong sutures and a button. The procedure causes some physical deformations and has a high failure rate.

The surgery was performed on November 11, 1999, after which Leah was sent home. On November 16, 1999, the button came loose, which prompted Mrs. Mollen-

hauer to contact Dr. Glat. He advised her to bring Leah in to see him the next day.

On November 19, 1999, Dr. Glat performed a procedure on Leah for the purpose of inserting a device that would keep Leah's tongue in a forward position. During the surgery, he, without having informed Mr. and Mrs. Mollenhauer, removed all of the sutures he had put into place during the previous surgery.

On November 23, 1999, Leah underwent a procedure to insert the device. The procedure failed because the device could not be inserted correctly. Dr. Glat tried again the next day to insert the device. This attempt failed as well. As a consequence, he performed a second tongue-lip adhesion on Leah. The surgery lasted over five hours. As with the first procedure, eventually it failed. The button in Leah's tongue moved forward; the sutures holding it in place cut a path through her tongue. When contacted and informed of this, Dr. Glat stated that the migration of the button was a positive sign insofar as it meant that Leah's jaw was growing and she, therefore, would outgrow her breathing problems. He thereafter advised the Mollenhauers to remove the button and suture holding it in place from Leah's tongue when it reached the tip of her tongue.

Subsequent thereto, after Dr. Glat recommended that Leah undergo more surgery, the Mollenhauers took Leah to Children's Hospital of Philadelphia, where her cleft palate was repaired and she underwent several surgical procedures, the purpose of which were to repair the physical damage caused to Leah as a result of the procedures she underwent while under Dr. Glat's care. As a

direct result of Dr. Glat's regimen and choice of care, Leah suffered extensive and permanent scarring as well as speech impediments. She also had to undergo several surgeries to correct the damage caused by Dr. Glat during the surgeries he performed.

## DISCUSSION

### Claims Raised by Defendant, Dr. Glat

In his 1925(b) statement, Dr. Glat first complains that this court erred in permitting plaintiff's expert witness, William Clark M.D., to testify about post-operative care of persons who have undergone a tongue-lip adhesion procedure because the subject was beyond the ken of his knowledge. He further argues that it was error to permit Dr. Clark to testify about the standard of care applicable to a plastic surgeon because Dr. Clark was not a plastic surgeon but an otolaryngology/ENT physician. According to Dr. Glat, since Dr. Clark never performed the aforementioned procedure, never cared for post-surgery persons who had, and was not a plastic surgeon, he lacked the necessary expertise to render an opinion about the care Dr. Glat provided Leah. Dr. Glat further claims that the Medical Care Availability and Reduction of Error Act, specifically 40 Pa.C.S. §1303.512, precluded Dr. Clark from testifying.

Having carefully reviewed the issues raised by Dr. Glat, it is this court's opinion that they should be deemed meritless. With regard to Dr. Glat's claim that the matters about which Dr. Clark testified were outside the scope of his knowledge, the record shows that Dr. Clark was a member of a board similar to the board encompassing

plastic surgery, namely, the American Academy of Facial Plastic and Reconstruction Surgery. He also was board-certified in surgery. (N.T. 9-8-04, pp. 37-39.) In addition, Dr. Clark indicated that he had been involved in about 50 or 60 cases involving Pierre Robins sequence and that he was familiar with the care and treatment of such individuals. (N.T. 9-8-04, pp. 41-44.) In view of the foregoing, it is clear that Dr. Clark possessed the requisite degree of knowledge and experience to render him capable of expressing an opinion, both about Dr. Glat's decision to perform the tongue-lip adhesion on Leah and the standard of care he provided her. Thus, this claim should be dismissed as meritless.

Dr. Glat's second claim should also be dismissed as meritless. This is so because 40 Pa.C.S. §1303.512 does not preclude a trial court from determining whether an expert witness is qualified to testify and does not prevent an expert witness, whose area of specialty may not be identical to the doctor whose care is being scrutinized, from testifying as an expert witness. This was made clear in the case of *Smith v. Paoli Memorial Hospital,* 885 A.2d 1012 (Pa. Super. 2005), wherein we find:

"In addressing the admissibility of the internist's testimony, the *Herbert* [*v. Parkview Hospital,* 854 A.2d 1285 (Pa. Super. 2004)] panel focused on the language of the MCARE Act requiring that the expert be familiar with the standard of care *for the specific care at issue* and practice in the same or a substantially similar subspecialty which has a substantially similar standard of care *for the specific care at issue. Id.* at 1292, quoting 40 P.S. §1303.512(c)(1) and (2). (emphasis in *Herbert*) Ac-

cording to the internist, any physician with specialized training and certification in internal medicine, of which nephrology is a subspecialty, should have noted anomalies in patient's behavior and the notes in the chart concerning patient's symptoms and behavior and concluded that patient's respiratory problems needed immediate attention. *Id.* at 1292-93.

"As the *Herbert* panel opined, 'the MCARE Act plainly prefers, and in some cases may require, that expert testimony in professional medical malpractice cases come from witnesses with expertise in the defendant's particular subspecialty.' *Id.* at 1294, citing 40 P.S. §1303.512(c). The *Herbert* panel declined to hold that the Act required that testimony in all cases be so restricted, observing, 'The "same subspecialty" ideal contained in section 1303.512(c)(2) includes an express caveat, reflecting the legislature's decision to afford the trial court discretion to admit testimony from a doctor with expertise in another specialty that 'has a similar standard of care *for the specific care at issue.*'" *Herbert,* 854 A.2d at 1294, quoting 40 P.S. §1303.512(c)(2). (emphasis in *Herbert*)

"According to *Herbert,* 'This reading comports with Pennsylvania courts' historical deference to trial courts' discretion in deciding whether to admit evidence at trial and is consistent with the plain language of the statute itself.' *Id.* As this court observed in *Herbert,* 'Indeed, the wisdom of restricting expert testimony to that of a nephrologist in this case might credibly be questioned, where "the specific care at issue" is the *failure* to provide care in the presence of an allegedly clear respiratory problem

the likes of which [internist] testified should have been obvious to [nephrologist].' *Id.* (emphasis in *Herbert*)

"We recognize the analytical distinctions between this case and *Herbert,* as gastroenterology is not a subspecialty of oncology or general surgery. It is, however, a subspecialty of internal medicine, in which Dr. Krutchik is board-certified. Furthermore, Dr. Battle's credentials as a general surgeon specializing in, inter alia, gastrointestinal surgery, who kept current with the field of gastroenterology in part by maintaining membership in the American Society of Gastrointestinal Endoscopy, which publishes a journal Dr. Battle received for 30 years, indicate his subspecialty is similar to that of gastroenterologists for the specific care at issue. As a panel of this court recently observed in the context of a psychiatrist whose testimony was excluded when he was called as an expert [witness] to testify as to the standard of care applicable to a resident who prescribed intravenous Ativan to treat a patient's anxiety, 'It is clear that the excluded testimony concerns the standard of care applicable to *any* physician who prescribes Ativan to treat anxiety.' *Campbell v. Attanasio,* 862 A.2d 1282, 1289 (Pa. Super. 2004) (emphasis in *Campbell*), *appeal denied,* 584 Pa. 684, 881 A.2d 818 (2005), and *appeal denied,* 584 Pa. 684, 881 A.2d 818 (2005)." *Smith,* 885 A.2d at 1020-21. (emphasis in original)

Instantly, Dr. Clark testified that he had extensive experience with patients having the same syndrome as Leah, as well as with the recommended course of treatment and care for such patients. In addition, his area of specialty was sufficiently similar to Dr. Glat's, such that

he not only was competent to render an opinion about the standard of care provided by Dr. Glat, but was also to meet the standards set forth in 40 Pa.C.S. §1303.512 for expert witnesses. In view of the foregoing, it is clear that this claim lacks merit and it should be denied.

In his remaining four issues, Dr. Glat asserts that this court committed reversible error by refusing to give the jury certain closing instructions he requested. He claims that this court should have instructed the jury on the following points of law:

(1) The "Two Schools of Thought" doctrine;

(2) That a doctor is not a warrantor of a cure or a guarantee of a successful result;

(3) That an unfortunate outcome or result, by itself, cannot be evidence that a doctor failed to exercise reasonable care; and

(4) That an unexpected or unfortunate result is neither proof of negligence nor negligence.

Review of each of these issues is governed by the following standards:

"In examining these instructions, our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. *Williams v. Philadelphia Transportation Company,* 415 Pa. 370, 374, 203 A.2d 665, 667 (1964). Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Glider v. Commonwealth, Department of Highways,* 435 Pa. 140, 151-52, 255 A.2d

542, 547 (1969). A charge will be found adequate unless 'the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error.' *Voitasefski v. Pittsburgh Railways Co.,* 363 Pa. 220, 226, 69 A.2d 370, 373 (1949); a reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental, *Sweeny v. Bonafiglia,* 403 Pa. 217, 221, 169 A.2d 292, 293 (1969); *Giorgianni v. DiSanzo,* 392 Pa. 350, 356, 140 A.2d 802, 805 (1958). In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. *McCay v. Philadelphia Electric Company,* 447 Pa. 490, 499, 291 A.2d 759, 763 (1972)." *Stewart v. Motts,* 539 Pa. 596, 606, 654 A.2d 535, 540 (1995).

Applying the foregoing standards to Dr. Glat's claims, it is clear to this court that Dr. Glat's requests that the jury be charged on the above principles of law were properly denied. With respect to his claim that the jury should have been charged on the "two schools of thought"[1] doctrine, the record shows that the issue in the

---

1. The "Two Schools of Thought" doctrine involves the situation where competent medical authority is divided as to the appropriate course of treatment. *Choma v. Iyer,* 871 A.2d 238 (Pa. Super. 2005). In such situations, a doctor is not negligent if he followed "a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise." *Jones v. Chidester,* 531 Pa. 31, 40, 610 A.2d 964, 969 (1992). The burden of proving the applicability of the doctrine rests with the party advocating for its use, *Tesauro v. Perrige,* 437 Pa. Super. 620, 650 A.2d 1079 (1994).

case did not concern whether there was more than one course of treatment available, but rather, whether Dr. Glat should have performed surgery at all without first attempting a more conservative treatment approach. Both Dr. Glat and his expert witness agreed with plaintiff's expert that the standard of care with respect to patients with Pierre Robins syndrome is to first attempt to alleviate the problems associated with the syndrome by using a conservative medical approach, *i.e.,* by employing non-surgical techniques. Surgery is appropriate, according to the experts, only if the conservative approach fails. It is at that time that various treatment options become available and the experts diverge as to what course of treatment is more effective. Insofar as there was no disagreement amongst the litigants as to what the initial standard of care should have been, it is clear that the "two schools of thought" doctrine did not apply and that no error occurred in denying Dr. Glat's request that the jury be instructed with respect thereto. See generally, *Choma v. Iyer,* 871 A.2d 238, 241 (Pa. Super. 2005). (Where course of treatment not in dispute, doctrine does not apply.)

Regarding Dr. Glat's remaining exceptions to this court's jury instructions and its refusal to charge the jury on the points of law referred to above, Dr. Glat has failed to provide this court with any authority stating that such instructions are mandatory and must be given to the jury, and that the failure to do so constitutes reversible error. This is fatal to this claim. It is noted that a review of the jury instructions the jury was given demonstrated that they adequately and accurately defined and described the law for the jury. As such, the charge met the dictates of

the law and Dr. Glat is entitled to no relief with respect thereto. Accordingly, his claims concerning this court's jury charge should be found meritless.

## PLAINTIFF'S CLAIMS

Plaintiff complains that this court erred when it refused to permit the jury to consider Leah's medical expenses as an item of damages. The claim is meritless because Pennsylvania law is clear that a minor may not recover his or her medical expenses, as such a cause of action rests with a minor's parents. *Haithi v. Krestown Park Apartments,* 385 Pa. Super. 613, 561 A.2d 1261 (1989). Furthermore, plaintiff's parents failed to plead this claim in their complaint. Accordingly, plaintiff's claim with respect to this issue should be denied.

## CONCLUSION

Based on the foregoing, the judgment entered in this matter should be affirmed.